**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**CAROLYN CHANDLER,**

        Plaintiff**,**

**v.**

**CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,**

        Defendant.

**CIVIL ACTION NO.: 1:15-CV-214
(JUDGE KEELEY)**

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On November 16, 2015, Plaintiff Carolyn Chandler ("Plaintiff"), by counsel Brian D. Bailey, Esq., filed a Complaint in this Court to obtain judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner" or "Defendant"), pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). (Compl., ECF No. 1). On January 14, 2016, the Commissioner, by counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed an answer and the administrative record of the proceedings. (Answer, ECF No. 6; Admin. R., ECF No. 7). On January 28, 2016, and February 8, 2016, Plaintiff and the Commissioner filed their respective Motions for Summary Judgment. (Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 9; Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 11). Following review of the motions by the parties and the administrative record, the

undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge.

## II. __PROCEDURAL HISTORY__

On March 11, 2011, Plaintiff protectively filed her first application under Title II of the Social Security Act for a period of disability and disability insurance benefits ("DIB") and under Title XVI of the Social Security Act for Supplemental Security Income ("SSI"), alleging disability that began on October 2, 2010. (R. 128-135). This claim was initially denied on June 21, 2011 (R. 77-81) and denied again upon reconsideration on August 26, 2011 (R. 87-89). On September 7, 2011, Plaintiff filed a written request for a hearing (R. 97-99), which was held before United States Administrative Law Judge ("ALJ") Terrence Hugar on August 31, 2012, in Morgantown, West Virginia. (R. 36-74). On September 27, 2012, ALJ Hugar issued an unfavorable decision to Plaintiff, finding that she was not disabled within the meaning of the Social Security Act. (R. 17-35). On December 19, 2013, the Appeals Council denied Plaintiff's request for review. (R. 1-6). Subsequently, Plaintiff appealed her case to this Court. This case was assigned to United States District Judge Gina M. Groh and referred to United States Magistrate Judge John S. Kaull. See Chandler v. Commr. of Soc.Sec., No.3:14-CV-19, 2014 WL 2998597 (N.D.W.Va. Jun. 11, 2014). On June 11, 2014, Magistrate Judge Kaull issued a Report and Recommendation, recommending that the case be remanded to consider the weight and reasons for the weight given to various medical providers. Id. at *15.

On July 21, 2015, a second hearing was held before ALJ Jeffrey La Vicka in Morgantown, West Virginia. (R. 412). Plaintiff, represented by Mr. Bailey, appeared and testified, as did Casey Bass, an impartial vocational expert. Id. On August 12, 2015, ALJ

La Vicka issued an unfavorable decision to Plaintiff, finding that she was not disabled within the meaning of the Social Security Act. (R. 389). Plaintiff did not request review by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. Afterwards, Plaintiff filed a complaint regarding the matter with this Court.

## III. <u>BACKGROUND</u>

### A. Personal History

Plaintiff was born on July 2, 1974, and was 36 years old at the time she filed her claim for SSI benefits. (R. 128-135). She was married at the time she filed her initial claim but was not living with her husband at the time of the administrative hearing. (R. 36-74). She has two adult children and lives with her eighteen year-old-son. (R. 45). She completed school through the ninth grade and has never received any specialized, trade or vocational training. (R. 147). Plaintiff's prior work experience included waitressing. (R. 147). Plaintiff alleges disability based on fatigue and pain in her joints. (R.50-52, 767).

### B. Medical History

#### 1. Treatment History[1]

Plaintiff reported to Williams Family Practice, PLLC, on December 19, 2012, for a follow-up appointment with Dr. Jeremy Williams. Plaintiff complained of getting muscle spasms at night and reported that her pain was poorly controlled. (R. 777). Plaintiff complained of pain in her hands and jaws and of having a lot of swelling in her legs. <u>Id</u>. Dr. Williams reported Plaintiff was experiencing tenderness to palpation over most

---

[1] The treatement history previously discussed in Magistrate Judge Kaull's Report and Recommendation, dated June 11, 2014, will not be repeated here. To review this information, please see <u>Chandler</u>, 2014 WL 2998597, at *2-8.

muscle groups, including tenderness over her shoulders, back and legs.  R. 779).  She was diagnosed with cramp of limb, fibromyalgia, and type 2 diabetes.  Id.

On June 6, 2013, Plaintiff returned to Dr. Williams for a three month checkup. (R. 780).  Patient reported having "a lot of pain in her shoulder," causing irritation and agitation.  Id.  She further reported she was getting muscle spasms which resulted in bruising.  Plaintiff noted she was unable to open bottles as a result of the pain and swelling she was experiencing in her hands.  Id.  She also reported fatigue.  Id.

On July 24, 2014, Plaintiff visited Mountain State Rheumatology.  Three views of Plaintiff's lumbar spine were examined. (R. 815).  The alignment was anatomic, the vertebral body height was normal without compression deformity, and the visualized disc spaces were unremarkable.  Id.  Mild spurring of the vertebral bodies was noted. Id.

August 28, 2014, Plaintiff returned to Mountain State Rheumatology for evaluation of diffuse joint pain. (R. 816).  Plaintiff complained of pain in her hip, hands and legs. Id.  She indicated having difficulty peeling potatoes and gripping objects with her hands. Id.  Plaintiff reported having cramps in her calves and experiencing spasms in her back which travelled into her shoulders.  She also reported experiencing fatigue and weakness. Id.

On September 1, 2014, Plaintiff returned to Mountain State Rheumatology complaining of pain in her hands and knees.  (R. 804-807).  No acute fracture or dislocation noted, no arthritic changes identified, and visualized joint spaces were noted unremarkable. Id.

On March 28, 2014, Plaintiff presented to Dr. Williams complaining of lower back pain and frequently going to the bathroom. (R. 784). She reported not checking her

sugars and experiencing "a lot of thirst," and frequent urination.  Id.  Plaintiff further reported discontinuing Lantus as it was causing nausea, and continuing the take Norco. Id.

During her June 3, 2014, appointment with Dr. Williams, Plaintiff reported she continued to have "achiness and pains," but that she was doing "okay" over all. (R. 788). She was diagnosed with Diabetes, hyperlipidemia, and rheumatoid arthritis.  (R. 790).

On November 21, 2014, Plaintiff returned to Dr. Williams for a check-up and to refill her medications.  (R. 791).  She rated the diabetic nerve pain in her legs as a five, and stated indicated that the bursitis in her hips and shoulders were "also bad."  Id.  She also reported not checking her sugar, indicating she did not want to "stick" herself.  Id.

During Plaintiff's March 19, 2015, appointment with Dr. Williams, Plaintiff reported she was not doing well, explaining she had allergies and was experiencing congestion, pressure between her eyes, coughing and some chills.  (R. 794).  She further reported having a lot of pain in her hands, legs, and hip and stated she was watching her sugar and noted it was running high. Id.

## 2.  Medical Reports/Opinions

On June 13, 2011, Plaintiff was seen by Morgan Morgan, M.A., for a consultative mental health examination. (R, 296-99).  Plaintiff reported the following: "recurrent depressive episodes," poor attention, concentration and recall, depressed mood, symptoms of anhedonia, poor rest, a low energy level and infrequent crying spells. (R. 296).  Among others things, Mr. Morgan opined Plaintiff had the following functional limitations: moderate deficiency in social functioning and pace, mild deficiency in

concentration, and severe deficiency in persistence and recent memory. (R. 299). Mr. Morgan further opined Plaintiff's immediate memory was within normal limits. Id.

On May 23, 2011, state agency medical consultant, Dr. Fulvio Franutti, completed a physical residual functional capacity ("RFC") assessment of Plaintiff (R. 288-295). Dr. Franyutti found that while Plaintiff possessed no manipulative, visual, or communicative limitations, Plaintiff did possess exertional , postural and environmental limitations. Regarding Plaintiff's exertional limitation, Dr. Franyutti found Plaintiff able to: (1) occasionally lift and/or carry twenty pounds; (2) frequently lift and/or carry ten pounds; (3) stand and/or walk for a approximately six hours in and eight-hour workday; (4) sit for approximately six hours in an eight-hour workday; and (5) push and/or pull with no limitations. (R. 289). Turning to Plaintiff's postural limitations, Dr. Franyutti noted that Plaintiff can occasionally climb ramp/stairs, balance, stoop, kneel, crouch and crawl; however, Plaintiff should never climb ladders, ropes or scaffolds. (R. 290). Finally, concerning Plaintiff's environmental limitations, Dr. Franyutti stated that Plaintiff must avoid concentrated exposure to extreme cold, extreme heat, vibrations and hazards. Dr. Franyutti , however, did note that Plaintiff need not avoid exposure to wetness, humidity, noise, fumes, odors, dusts, gases or poor ventilation. (R. 292).

Dr. Franyutti noted, Plaintiff alleged that she has trouble walking, sitting and standing, explaining that they make her legs and hip hurt and sometimes causes her to lose her balance. Id. She further stated that if she lifts anything over five pounds her back and shoulders hurt. (R. 295). She "stays tired and aches." Id. Dr. Franyutti found Plaintiff to be partially credible. Id.

Plaintiff presented to McCullough Psychological Service on August 15, 2012, for a psychological examination. (R. 382). Mr. McCullough administered the Million Clinical Multiaxial Inventory-Third edition. Id. He opined Plaintiff's "behavioral and characterological tendencies . . . have resulted in her inability to adequately adapt to her environmental changes and stressors," noting her environmental stressors include "her physical status, economic issues, and marital difficulties." (R. 385). Mr. McCullough further noted that Plaintiff's inability to adapt has "resulted in behaviors consistent with one or more DSM-IV-TR disorders." Id. Mr. McCullough diagnosed Plaintiff to have major depressive disorder, but of a "single episode nature." Id. Mr. McCullough found Plaintiff's pain disorder diagnosis to be appropriate, and that Plaintiff is likely to continue to experience "a classic depression-pain cycle given her personality structure and continuing decline of physical status." Id. Lastly, Mr. McCullough opined that Platiniff meets Social Security listing 12.04. Id.

On September 20, 2012, Dr. Jeremy Williams, submitted to Plaintiff's counsel, a letter addressing Plaintiff's medical conditions including: diabetes, mild osteoarthritis and degenerative joint disease of the spine, fibromyalgia and depression. (R. 387-88). Dr. Williams opined that Plaintiff has been experiencing severe limitations arising out of a chronic pain disorder, specifically noting that Plaintiff has had limited resources and has not always had medical insurance coverage, which has made treatment of her depression difficult. (R. 387-88). Dr. Williams explained that he has attempted to treat Plaintiff's fibromyalgia with medication she is able to afford. (R. 387). Regarding Plaintiff's fibromyalgia, Dr. Williams concluded Plaintiff has a history of widespread pain, has sixteen and eighteen trigger points identified by a qualified rheumatologist and

whose condition is not explained by another condition. (R. 388). Her further opined that Plaintiff would have difficulty maintaining a work-like schedule. Id.

On July 15, 2014, psychologist, Robert J. Klein Ed.D, completed an adult mental status evaluation of Plaintiff. Plaintiff reported she was in constant pain, had difficulty holding objects as her grasp would suddenly release, she was unable to bend or stoop without falling, she could not lift, she could only stand for five minutes at a time before her legs would give out, and she could only be seated for a brief time, without becoming panicky (R. 753). Plaintiff expressed she has troubling sleeping, she was "'very depressed'" and felt like she had no reason live, but expressed she did not have suicidal thoughts. Id. Dr. Klein noted Plaintiff indicated that she may help with laundry, cooking, cleaning and washing dishes. She expressed that she tires quickly, does not drive, and shops only if she is accompanied. Dr. Klein noted Plaintiff was mildly deficient in social functioning and concentration. Her pace was slow and persistence was within normal limits. Immediate and remote memory were within normal limits while recent memory was markedly deficient. (R755). He further noted that the origin of Plaintiff's pain is not psychological and does not arise from "some characterlogical deficits." (R. 756). Dr. Klein stated Plaintiff has become more overwhelmed, fearful, emotionally abandoned and helpless. Id. He further noted Plaintiff's depression became more severe and her level of adaptive functioning decreased. Dr. Klein concluded that Plaintiff meets "the necessary DSMIV-TR criteria for Major Depressive Disorder, Severe and Panic Disorder, and concluded her prognosis was poor. Id.

On July 25, 2014, Dr. Bennett Orvik, a state agency physician, completed a Disability Determination Examination of Plaintiff. Plaintiff primarily complained of

arthritic and achy pain in her back, hips, knees, ankles and hands joints, and is of the belief that she has too much pain to be able to work. (R. 766-67). Plaintiff indicated that her pain is aggravated by an increase in physical activity and that the medications she has been taking only help the pain subside to certain extent. (R. 767).

Dr. Orvik noted Plaintiff's muscle strength in both arms and legs was 5/5. (R. 769). Her grip strength was approximately 4/5 bilaterally. Id. Plaintiff's shoulder motions were mildly limited, while her wrist and elbow motions were normal. Id. Plaintiff's knee flexion and extension appeared to be normal. Her hip motion showed normal flexion and abduct was "probably 30 degrees bilaterally." (R 769). Other hip, ankle and cervical spine motions were normal. Plaintiff tandem walked reasonably well and walked well on her heels and toes. She was able to bend to eighty degrees. Gait, motor skills, and stance were normal. Plaintiff's diagnoses included the following: (1) back pain with lumbar degenerative disk disease, (2) diabetes treated with insulin, (3) diabetic neuropathy, (4) osteoarthritis, (5) depression, and (6) anxiety disorder. Dr. Orvik noted Plaintiff claims that she can sit for approximately ten minutes, stand for approximately ten minutes, walk less than a fourth of a mile, lift and carry ten pounds, has trouble handling objects with her hands, and is able to travel short distances in a vehicle. Finally, Dr. Orvik determined Plaintiff has a mild range of motion abnormalities. (R. 770).

On February 11, 2014, Dr. Rabah Boukhemis completed a physical residual functional capacity (RFC) assessment, finding Plaintiff has no exertional (lifting, carrying, walking, standing, sitting, pushing, or pulling) or non-exertional (postural, manipulative, visual, communicative, or environmental) limitations.

On July 25, 2014, Rosemary L. Smith, Psy.D., provided an opinion on Plaintiff's functional limitations, noting Plaintiff had moderate difficulties in maintaining concentration, persistence or pace, mild difficulties in maintaining social functioning, mild restrictions of daily living activities and no episodes of decompensation. (R. 485). Additionally, Dr. Smith completed a mental residual functional capacity (MRFC) assessment of Plaintiff. (R. 487-89). While Dr. Smith found that across the functional and adaptive domains, Plaintiff had a few moderate limitations, she concluded Plaintiff is able to understand, remember and carry out simple routine and repetitive tasks involving simple instructions in situations that do not require strict production quota. (R. 488-89)

On September 17, 2014, Chester Frethiem, Psy.D., completed a mental RFC of Plaintiff (R. 502-03). Dr. Frethiem found Plaintiff is able to "understand, remember, and carry out, simple, routine, and repetitive tasks involving simple instructions in situations that do not require strict production quota." (R. 503).

On September 23, 2014, Dr. Uma Reddy completed a physical RFC of Plaintiff. (R. 500-502). Dr. Reddy found that while Plaintiff possessed no manipulative, visual, communicative or environmental limitations, Plaintiff did possess exertional and postural limitations. Regarding Plaintiff's exertional limitations, Dr. Reddy found Plaintiff able to: (1) occasionally lift and/or carry twenty-five pounds; (2) frequently lift and/or carry ten pounds; (3) stand and/or walk for approximately six hours in and eight-hour workday; (4) sit for approximately six hours in an eight-hour workday; and (5) push and/or pull with no limitations. (R. 501). Turning to Plaintiff's postural limitations, Dr.

Reddy noted that Plaintiff can occasionally climb ramp/stairs, ladders, ropes and scaffolds, and occasionally balance, stoop, kneel, crouch and crawl. Id.

Dr. Reddy noted Plaintiff alleged back and joint problems and acknowledge she was taking multiple pain medications. Id. He further noted, Plaintiff indicated "light work" in her activities of daily living. Id.

## C. Testimonial Evidence[2]

As an initial matter, the ALJ explained that "subjective findings" in the record were "grossly inconsistent" with Plaintiff's allegations, and as a result, ordered consultative examinations to be conducted. (R. 417). The ALJ stated Plaintiff refused to attend the consultative examinations, opining that she wanted to "pick or choose which consultative expert she would or would not got to." Id. The ALJ highlighted that 20 CFR § 404.1518 allows for finding a claimant is not disabled if the claimant fails to provide a good reason for failing to attend consultative examinations, and stated he believed Plaintiff did not have a good reason for failing to attend her consultative emanations. Id.

Thereafter, the ALJ made two inquires of Plaintiff: (1) whether she still smoked and (2) whether she had worked since ALJ Hugar denied her claim. She answered in the negative to both questions, explaining she has not worked and has not smoked in a year and a half." (R. 418). Plaintiff's counsel did not have any questions for Plaintiff.

## D. Vocational Evidence

Casey Vass, an impartial vocational expert also testified during the administrative hearing on July 21, 2015. (R. 412-23). Operating under the assumption that Plaintiff

---

[2] Only the testimony offered at the administrative hearing held on July 21, 2015, will be discussed in this section. The testimony offered at the administrative hearing held on August 31, 2012, was previously discussed in Magistrate Judge Kaull's Report and Recommendation, dated June 11, 2014. To review this information, please see Chandler, 2014 WL 2998597, at *7-8.

cannot do her past relevant work, The ALJ preented a hypothetical question for Mr. Vass's consideration (R. 419).  Specifically, the ALJ asked Mr. Vass to:

> [A]ssume a hypothetical individual with the same age, education, and work experience as the individual of the same age, education, and work experience as the claimant, and she is currently 41 years of age, at least a ninth grade education, who retains the capacity to perform sedentary work with allowance to alternate sitting or standing positions for up to two minutes at 30-minute intervals without going off task; who is limited to occasional posturals, except no climbing of ladders, ropes, or scaffolds; who is limited to frequent handling and fingering bilaterally; who must avoid all exposure to extreme cold and heat, wetness, and humidity, all exposure to excessive vibration, all exposure to unprotected heights, hazardous machinery, and commercial driving; whose work is limited to simple, routine, and repetitive tasks requiring only simple decisions, with no fast-paced production requirements and few workplace changes; must have only occasional interaction with the public, coworkers, and supervisors.
>
> Are there jobs in the regional or national economy that such an individual could perform?

(R. 419-20).  In response to the hypothetical, Mr. Vass testified that such an individual could work as a surveillance system monitor, small parts assembler, and a product inspector.  (R. 420).

The ALJ then asked Mr. Vass several general questions.  First, the ALJ asked Mr. Vass to describe how frequently an employer would allow an employee to be late to work or to have unexcused or unscheduled absences. (R. 420).  Mr. Vass testified that typical employers tolerate "a day and a half a month; termination if exceeded." Id. Second, that ALJ asked Mr. Vass to describe the number and length of breaks that a typical employer permits during the workday.  Id.  Mr. Vass testified that employers typically allow employees to take a fifteen-minute break in the morning, a fifteen-minute break in the afternoon and thirty minutes for lunch. Id. Third, the ALJ askedMr. Vass to describe how much time a typical employer permits an employee "to be off task in

addition to regularly scheduled breaks." Id. Mr. Vass testified that employers typically allow employees to be off task for [t]en percent at the workstation" and that, if an employee exceeds this amount of time, his or her employment would be terminated. Id. After answering the ALJ's questions, Mr. Vass testified that his testimony was consistent with the Dictionary of Occupational Title ("DOT"). (R. 421).

Plaintiff's counsel, Mr. Bailey, also presented questions for Mr. Vass' consideration during the administrative hearing. First, Mr. Bailey asked Mr. Vass to confirm that all jobs require an employee to use his or her hands for a third of the day or more. Mr. Vass responded that is true except for the surveillance system monitor which requires less than a third. (R. 421). Second, Mr. Bailey asked Mr. Vass to consider a person who could not use their hands at all on a consistent basis, and how that would affect their ability to do a surveillance monitor job. (R. 421). Mr. Vass responded "[n]o use of the hands would be no jobs." Id. Third, Mr. Bailey asked what type of affect would a habit of not being able to finish "simple, routine, repetitive tasks" have on a person's employment. Id. Mr. Vass responded "[t]hey would be terminated." Id. Fourth Mr. Bailey asked Mr. Vass to describe the affect constant reminders or encouragement to complete tasks would have on employment. (R. 422). Mr. Vass stated that would be "more like sheltered employment, not competitive," and could eliminate all three jobs. Id.

**E. Disability Reports**

On April 18, 2011, Plaintiff completed a disability report (R. 145-52). Plaintiff indicated that certain physical and mental conditions impacted her ability to work: (1) panic attacks and anxiety, (2) deterioration of the spine, (3) osteoarthritis, (4)

fibromyalgia, and (5) diabetes. (R.146). Plaintiff stated that she stopped working on October 2, 2010, because of these conditions. Id.

Plaintiff later submitted two disability report-appeal forms in June and September of 2011, indicating on both occasion that there was no change in her condition (R. 162-67, 181-86).

On March 17, 2014, Plaintiff completed a second disability report (R. 691-98). Plaintiff indicated that the following conditions impacted her ability to work: (1) diabetes, (2) panic attacks, (3) anxiety, (4) osteoarthritis, (5) deterioration of the spine, (6) fibromyalgia (7) major depression (8) sleep disorder with restless leg and (9) lumbar spine DDD. (R. 692). Plaintiff stated that she stopped working on October 2, 2010, because of these conditions. Id.

Subsequently, Plaintiff submitted two disability report-appeal forms in August and October of 2014, indicating there was no change in her condition. (R. 709-13, 717-23).

**F.    Lifestyle Evidence**

On an adult function report dated April 21, 2011, Plaintiff stated that she has trouble walking, sitting and standing, explaining they make her legs and hip joints hurt and causes her to lose her balance. (R. 153). She described her typical days as doing household chores, but highlighted that it takes her an hour to get out of bed because of her stiff joints, and that after beginning her chores she has to "keep stopping" because she gets tired and aches. (R. 154). Plaintiff indicated that her sister helps her around the house. Plaintiff is able to prepare meals, but explained that most of them consist of

frozen dinner and sandwiches. (R. 155). At night she has difficulty sleeping and ends up being tired the following day. (R. 154).

In her report, Plaintiff explained how she is physically limited in some areas but not in others. Plaintiff indicated she has no problems with her personal care, but indicated she does not do house or yard work, other than laundry, because of the pain she experiences. (R. 154-156). Plaintiff obtains help from her sister with grocery shopping. (R. 156).

While Plaintiff can perform some activities, others prove more difficult. For example, Plaintiff indicated that she watches television but does not socialize much with others. (R. 157). Plaintiff stated that she can only lift about five pounds and that squatting, bending, and standing hurts her hips and legs and reaching hurts her shoulders. (R. 158). Regarding her mental abilities, Plaintiff indicated she forgets things and cannot concentrate well. (R158).

On a second adult function report dated July 12, 2011, Plaintiff reported that she was unable to sit, stand, or walk very much. (R. 170). She further stated that she is tired and achy. (R. 170). Her typical day involves reading a magazine and propping up her feet. (R. 171). Plaintiff stated she use to shop, cook, mow the lawn and attend family functions, but because of her impairments she is no longer able to do so. Id. She continues to do laundry and prepare microwaved meals. (R. 172). Plaintiff indicated that her husband had to remind her to take her medicine. Id. She further stated she is still unable to lift anything more than five pounds, she has a short attention span and that she does not handle stress or changes to her routine well. (R. 176).

In a third adult function report dated March 18, 2014, Plaintiff reported that that she still experiences fatigue and chronic pain on a daily basis. (R. 699). Plaintiff indicated that she still cannot partake in certain activities such as cooking and cleaning, but she is still able to prepare "frozen dinners"." (R. 701). She tries to go outside once a day. She socializes with family members. (R. 703). Regarding her physical and mental limitations, Plaintiff stated that she can walk fifteen to twenty feet before having to rest for five minutes and that she is able to pay attention for ten to fifteen minutes. (R. 704). She still has pain in her hips, knees, and legs. Id.

## IV.    THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work…'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (2006). The Social Security Administration uses the following five-step sequential evaluation process to determine if a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

[Before the fourth step, the residual functioning capacity of the claimant is evaluated based "on all the relevant medical and other evidence in your case record . . ." 20 C.F.R. §§ 404.1520; 416.920 (2011).]

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520; 416.920 (2011). If the claimant is determined to be disabled or

not disabled at one of the five steps, the process does not proceed to the next step. Id.

## V.    ADMINISTRATIVE LAW JUDGE'S DECISION

Utilizing the five-step sequential evaluation process described above, the ALJ

made the following findings:

1.    The claimant has not engaged in substantial gainful activity since March 11, 2011, the application date (20 CFR 416.971 *et seq.*).

2.    The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; fibromyalgia; history of trochanteric bursitis; osteoarthritis; restless leg syndrome; diabetes mellitus with neuropathy; arthritic changes of the bilaterall hands; major depressive disorder; anxiety disorder; and chronic pain syndrome (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, 416.926).

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

perform sedentary work as defined in 20 CFR 416.967(a)that: affords an opportunity to alternate sitting and standing positions up to 2 minutes at 30 minute intervals without going off task; requires no more than occasional posturals except no climbing of ladders, ropes, scaffolds: requires no more than frequent bilateral handling and fingering; avoids all exposure to extreme cold and heat, wetness, humidity, excessive vibration, unprotected heights, hazardous machinery, and commercial driving; limited to simple routine and repetitive tasks requiring only simple decisions with no fast paced production requirements and few work place changes; and involves no more than occasional interaction with public, coworkers and supervisors.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on July 2, 1974 and was 36 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, from March 11, 2011, through the date the application was filed (20 CFR 416.920(g)).

(R. 20-31).

# VI. DISCUSSION

## A. Contention of the Parties

Plaintiff, in her Motion for Summary Judgment, asserts that the Commissioner's decision is based upon an error of law and is not supported by substantial evidence. (Pl.'s Mot. at 1). Specifically, Plaintiff alleges that:

1. Because the ALJ did not adequately explain why he gave Dr. Williams' opinion partial weight then this Court must remand this claim.

2. Because the ALJ utilized improper reasons for discounting the opinion of Psychologist McCullough then this Court must remand this claim.

3. Because the ALJ was unclear in the weight he gave to state agency consultative and reviewing sources, then this Court must remand this claim.

(Pl.'s Br. in Supp. of Mot. for Summ. J. ("Pl.'s Br.") at [1], ECF No. 10). Plaintiff asks the Court to remand her claim to the Commissioner "to evaluate Dr. Williams' opinion and Psychologist McCullough's opinion under the factors the Commissioner has outlined in 20 CFR § 416.927(a)." (Id. at 13).

Defendant, in her Motion for Summary Judgment, asserts that the decision is "supported by substantial evidence and should be affirmed as a matter of law." (Def.'s Mot. at [1]). Specifically, Defendant alleges that the ALJ properly formulated Plaintiff's RFC. (Def.'s Br. in Supp. Of Def.'s Mot. for Summ. J. ("Def.'s Br.") at [8], ECF No. 12).

## B. Scope of Review

In reviewing an administrative finding of no disability the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a

reasonable mind might accept to support a conclusion." <u>Richardson v. Perales</u>, 402

U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229

(1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial

evidence "consists of more than a mere scintilla of evidence but may be somewhat less

than a preponderance. If there is evidence to justify a refusal to direct a jury verdict

were the case before a jury, then there is 'substantial evidence.'" <u>Shively v. Heckler</u>, 739

F.2d 987, 989 (4th Cir. 1984) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir.

1968)). However, "it is not within the province of a reviewing court to determine the

weight of the evidence, nor is it the court's function to substitute its judgment…if the

decision is supported by substantial evidence." <u>Hays</u>, 907 F.2d at 1456 (citing <u>Laws</u>,

368 F.2d at 642; <u>Snyder v. Ribicoff</u>, 307 F.2d 518, 529 (4th Cir. 1962)). In reviewing the

Commissioner's decision, the reviewing court must also consider whether the ALJ

applied the proper standards of law: "[a] factual finding by the ALJ is not binding if it was

reached by means of an improper standard or misapplication of the law." <u>Coffman v.

Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).

**C.      Analysis of the Administrative Law Judge's Decision**

**1. Evaluation of Treating Physician's Medical Opinion**

Plaintiff first argues that the ALJ erred by failing to adequately explain why he

gave the opinion of treating physician, Jeremy Williams, partial weight. Conversely, the

Commissioner argues the ALJ did not err, noting that an ALJ is not bound by a medical

source's opinion, and explaining the ALJ supported his finding with substantial

evidence.

The regulations, specifically 20 C.F.R. § 404.1527(c), discuss how the ALJ weighs treating source medical opinions:

*How we weigh medical opinions.* Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion

(1) *Examining relationship.* Generally we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) *Treatment relationship.* Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(i) *Length of the treatment relationship and the frequency of examination.* Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the treating source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the

source's opinion more weight than we would give it if it were from a non treating source.

> (ii) *Nature and extent of the treatment relationship.* Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.

(3) *Supportability*. The more a medical source presents relevant evidence to support an opinion particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) *Consistency*. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) *Specialization*. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6) *Other factors.* When we consider how much weight to give a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an

acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it.  See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Such opinions should be accorded great weight because they "reflect[] an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983).  In Craig v. Chater, however, the Fourth Circuit further elaborated on this rule:

Circuit precedent does not require that a treating physician's testimony "be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). In fact, 20 C.F.R. §§ 404.1527(c)(2) and 416.927(d)(2) (emphasis added) both provide,

[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight.

By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.

76 F.3d 585, 590 (4th Cir. 1996). In addition, "[n]either the opinion of a treating physician nor the determination of another governmental entity are binding on the Secretary." DeLoatch v. Heckler, 715 F.2d 148, 150 n.1 (4th Cir. 1983). Thus, "[t]he treating physician rule is not absolute." See Hines v. Barnhart, 453 F.3d 559, 563 n.2 (4th Cir. 2006).

Some issues are reserved specifically for the Commissioner and opinions on such issues "are never entitled to controlling weight or special significance." SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). For example, the Commissioner is responsible for determining whether a claimant is disabled or unable to work. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Therefore, a medical source that offers an opinion on whether an individual is disabled or unable to work "can never be entitled to controlling weight or given special significance." SSR 96-5p, 1996 WL 374183, at *5.

The Fourth Circuit has also noted that a court "cannot determine if findings are supported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984). An ALJ's failure to do this "approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977) (quoting Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974)). An ALJ is not required to mention every piece of evidence, but must at minimum provide an "accurate and logical bridge" between the evidence and her conclusion such that would permit meaningful judicial review. Craft v. Astrue, 539 F.3d at 673.

Here, because Dr. Williams is a treating physician, the ALJ was required to explain the amount of weight afforded to his opinions and the reasons for such allocation. Specifically, as to Plaintiff's hand limitations, the ALJ acknowledged that Dr. Williams found Plaintiff is limited to occasional use of her hands and that it would be difficult for her to maintain a work-like schedule due to her need for frequent breaks. (R. 401). While the ALJ assigned partial weight to this opinion, he failed to adequately

explain his reasons for doing so. The ALJ follows this partial assignment of weight stating the following:

> The [ALJ] has accommodated the hand limitation in the residual functional capacity, as one x-ray showed possible arthritic changes in one hand and the consultative examination . . . [showed] 4/5 grip strength, but he finds the inability to maintain a work like schedule unsupported by the evidence. Both consultative examinations support that the claimant's physical and mental impairment are not causing debilitating limitations, as these show 5/5 muscle strength, normal ambulation, no assistive device, normal motor skills, and no more than mild to moderate deficits in social functioning and concentration, persistence, and pace. Further, her activities of daily living support some ability to interact appropriately, concentrate, complete tasks, and persistent, and the medical evidence of record supports that a sit/stand option with the normal breaks would fully accommodate any symptoms consistent with the medical evidence of record. Additionally, whether an individual is disabled is an administrative finding that is reserved to the Commissioner (SSR 96-5p).

(R. 401). While it is true that a finding of disability is reserved for the Commissioner, affording the treating physician's opinion partial weight as to Plaintiff's hand limitation and frequency of breaks requires further explanation. The standard for affording less weight to a treating physician's opinion rests on whether the physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence in the record. The ALJ failed to identify any inconsistencies or explain how Dr. Williams' opinion is not supported by clinical evidence; he must do so to enable meaningful judicial review.

### a. Clinical Evidence

It should be noted that the objective medical evidence cited by the ALJ, "5/5 muscle strength, normal ambulation, no assistive device, and normal motor skills," says little to address the severity of Plaintiff's subjective complaints of pain, one of the primary symptoms she alleges prevents her from being able to work.

The Social Security regulations permit ALJs to consider a physician's treatment records, including any objective findings, in weighing the physician's opinions. "The more a medical source presents evidence relevant to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion." 20 C.F.R. § 404.1527(c)(3). However, the lack of objective findings says little about the severity of Plaintiff's fibromyalgia. See Preston v. Sec'y of Health & Human Sevices, 854 F.2d 815, 819-20 (6th Cir. 1988) (explaining normal physical examination findings, "a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions," are not unusual or highly relevant to diagnosing fibromyalgia or its severity, as fibromyalgia patients typically manifest normal strength, neurological reactions, and range of motion; see also, See Ellis v. Colvin, 5:13CV00043, 2014 WL 2862703, at *10 (W.D. Va. June 24, 2014) (stating "because an absence of muscle strength is not a marker of fibromyalgia, ability to move without assistive devices is not significantly inconsistent with Plaintiff's subjective complaints.") (quoting Cota v. Commissioner, No. 1:08-cv-00842-SMS, 2009 WL 900315, at *10 (E.D. Cal. Mar. 31, 2009). Fibromyalgia is largely a diagnosis "by exclusion and testing of certain 'focal tender points' on the body for acute tenderness." Id. at 818. See Johnson v. Astrue, 597 F.3d 409,413 (1st Cir. 2009) (noting a lack of objective findings in fibromyalgia cases can be expected.); see also Soc. Sec. Rul., Ssr 12-2p; Titles II and Xvi: Evaluation of Fibromyalgia, SSR 12-2P (July 25, 2012) (explaining how Commissioner evaluates fibromyalgia criteria). In short, "it is difficult to determine the severity of fibromyalgia because of the unavailability of objective clinical tests." Sarchet v. Chater, 78 F. 3d 305, 307 (7th Cir. 1996). Accordingly, the objective medical evidence offered

by the ALJ does not sufficiently support rejecting Dr. Wiliam's opinion regarding Plaintiff's limitations.

### b. Daily Activities

The ALJ does not specifically identify which of Plaintiff's daily activities are inconsistent with Dr. Williams' opinion. However, in various parts of his opinion, he does address Plaintiff's activities of daily living that he finds are "inconsistent with debilitating physical and mental impairments." (R. 398). The ALJ noted Plaintiff "prepares simple meals . . . some from scratch, washes dishes, sweeps, mops, cleans, does laundry daily, eats out at restaurants, rarely shops, visits with family and friends, watches television, and reads magazines and newspapers. . . attends to her own personal care, drives, shops in stores (in 2014 she reported she no longer shops), pay bills, handles bank accounts, does laundry daily, sweeping/mopping/tidying up twice weekly, watches television, and visits with family" (R 397-98).

It is unclear how Plaintiff's activities undermine Dr. Williams' opinion regarding Plaintiff's limitations. None of the reported activities are inconsistent with the hand limitations or the need for frequent breaks as outlined by Dr. Williams. Plaintiff's activities were for a short period of time and limited or precluded by pain and/or fatigue. A claimant's ability to perform modest activities of daily living with some assistance is not a reason to reject claims of disabling pain. Ellis v. Colvin, 5:13CV00043, 2014 WL 2862703, at *10 (W.D. Va. June 24, 2014) (citation omitted). See also, Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir. 1995) (finding that "the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work."); Rogers v. Commr. of Soc. Sec., 486

F.3d 234, 248 (6th Cir. 2007) (classifying a fibromyalgia sufferer's activities of being able to drive, clean her apartment, care for two dogs, do laundry, read, do stretching exercises, and watch the news despite complaints as minimal daily functions not that are comparable to typical work activities). The ALJ's failure to identify any inconsistency between Plaintiff's reported activities and Dr. Williams' opinion, the ALJ has erred and the undersigned finds the ALJ's decision is not supported by substantial evidence.

### 2. Evaluation of Rod McCullough's Psychological Medical Opinion

Plaintiff next asserts that the ALJ used improper reasons for discounting the opinion of Psychologist Rod McCullough. Alternatively, the Commissioner argues the ALJ gave proper weight to Mr. McCullough's opinion, noting he was a consultative examiner who rendered his psychological opinion of Plaintiff after seeing him one time.

When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. 404-1527(c))

Like treating sources, the ALJ must assign weight to a non-treating source's opinion and adequately explain his reasons for do so. 20 C.F.R. §404.1527(e)(2)(ii), 416.927(e)(2)(ii). See also Bryant ex rel.Bryant v. Barnhart, 63 F. App'x 90, 95 (4th Cir. 2003) (stating that the ALJ must explain weight

accorded to non-treating source opinions). Moreover, the ALJ's explanation must be sufficiently clear so that a court may provide meaningful review.

Here the ALJ gave the opinion of Rod McCullough, MA, an independent psychological examiner, little weight, stating Mr. McCullough's opinion that Plaintiff has marked limitations in social functioning and concentration, persistence, and pace is not supported by any other examinations in the record, or by the claimant's activities of daily living." (R. 396). Regarding other examinations in the record, the ALJ noted Plaintiff has not received any mental health treatment, has had no emergency room visits, or hospitalizations for mental issues. Id. He noted that her primary care physician treatment notes, rheumatology treatment notes, and the consultative examination did not show any significant deficits in behavior. Id. The ALJ further noted the Mr. McCullough's opinion conflicted with the opinions of the state agency psychologists, Dr. Smith and Dr. Frethiem, and with the findings of consultative psychological examiner Morgan D. Morgan, M.A. Moreover, the ALJ found that Plaintiff's daily activities support some ability to interact appropriately with others, focus, maintain attention and concentration, and complete tasks. (R. 402). Based on the ALJ's review of the record as a whole, the undersigned is persuaded that the ALJ considered appropriate factors and provided sufficient reasons for assigning little weight to Mr. McCullough's opinion.

### 3. Weight given to state agency consultative and reviewing sources.

Lastly, Plaintiff asserts that the ALJ's decision requires remand because the ALJ was unclear in the weight he assigned to state agency consultative and reviewing

sources. Plaintiff notes that the ALJ did not specify which source got what weight. Alternatively, the Commissioner asserts that the ALJ's weight assignment was clear, stating that he gave great weight to the medical providers' opinions that Plaintiff had moderate limitations in social functioning and little weight to their opinion that Plaintiff had only mild limitations in activities of daily living.

While the ALJ's explanation of weight assigned to Dr. Smith, Dr. Frethiem and Mr. Morgan was not eloquently articulated, the Court finds the ALJ's weight assignments of these providers are sufficiently supported. It is the Court's understanding that the ALJ generally gave partial weight to the opinions of all three providers. In carrying out his duty to explain the partial weight assignment, the ALJ gave great weight to their opinions finding Plaintiff is moderately limited in social functioning, and little weight to their opinions finding Plaintiff is mildly limited in her activities of daily living. (R. 402). In support of his weight assignments, the ALJ noted the consistencies and inconsistencies of these opinions with Plaintiff's reported activities of daily living, limitations, and allegations of pain and fatigue. It was in the ALJ's discretion to assign partial weight to the opinions of Dr. Smith, Dr. Frethiem and Mr. Morgan, and orovided sufficient explanation in doing so. Accordingly, the undersigned finds that the ALJ's weight assignment to Dr. Smith, Dr. Frethiem and Mr. Morgan's opinions is supported by substantial evidence.

## VII.   CONCLUSION

Upon consideration of all the above, the undersigned United States Magistrate Judge Finds and concludes that substantial evidence does not support the ALJ's determination that Plaintiff was not disabled during the relevant time period, and

recommends that the case be reversed and remanded for the ALJ to redo his analysis of weight afforded to the treating physician Jeremy Williams, reviewing all of the relevant factors, and support his conclusion with substantial evidence.

## VIII. <u>RECOMMENDATION</u>

For the reasons herein stated, I find that the Commissioner's decision denying the Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income is not supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment (ECF No. 9) be **GRANTED**, Defendant's Motion for Summary Judgment (ECF No. 11) be **DENIED**, and this case be **REMANDED** to the Commissioner for the reasons set forth within.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures

for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this January 31, 2017

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE